## POINT II

## PLAINTIFFS FAIL TO ESTABLISH THEY WILL SUFFER IRREPARABLE HARM

Plaintiffs' application also should be denied because they have not established, and cannot establish, that they will suffer irreparable harm in the absence of injunctive relief, which is "[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction." *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (per curiam) (alteration in original) (quoting *Bell & Howell: Mamiya Co.* v. *Masel Supply Co.*, 719 F.2d 42, 45 (2d Cir. 1983)). To meet their burden, plaintiffs "must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm." *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (citation omitted).

Here, Plaintiffs argue that the have been irreparably harmed because they face termination or "damage to their licensure and credentialed status" if not permitted to seek a religious exemption from the vaccine requirement. Pls.' Mem. of Law, ECF No. 5-1 at p. 19. However, it is well established that neither the loss of employment nor financial loss constitute "irreparable harm" for purposes of determining whether injunctive relief is warranted. *Sampson* v. *Murray*, 415 U.S. 61, 90–92 (1974); *Hyde v. KLS Pro. Advisors Grp., LLC*, 500 F. App'x 24, 25 (2d Cir. 2012); *Savage v. Gorski*, 850 F.2d 64, 67 (2d Cir. 1988). That is because a loss of employment is remediable by other means at the conclusion of the litigation, should any remedy be warranted. *Hyde*, 500 F. App'x at 25; *Savage*, 850 F.2d at 68.

This failure, in of itself, is fatal to Plaintiffs' motion for a preliminary injunction. Moreover, even if Plaintiffs could establish that a loss of employment constitutes irreparable harm—and they cannot—that prospect is remote. Plaintiffs' suggestion that their employer may

terminate them is a dispute between plaintiffs and their private employers, entities that have not been named as defendants in this suit. Moreover, plaintiffs have not show that immediate termination or loss of their licenses is a necessary consequence of their decision not to be vaccinated.[6] As discussed above, Section 2.61 would not, for example, prohibit a covered entity from offering an accommodation to an employee so long as the employee does not "engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." 10 N.Y.C.R.R. § 2.61(a)(1).

Further, Plaintiffs cannot rely on the mere fact they have alleged a "loss of First Amendment freedoms" to establish irreparable harm. "Although 'the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury,'" courts "have not consistently presumed irreparable harm in cases involving allegations of the abridgment of First Amendment rights[.]" *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 349 (2d Cir. 2003) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see also CompassCare v. Cuomo*, 2020 U.S. Dist. LEXIS 98930, *30 (N.D.N.Y. June 5, 2020). A movant is entitled to the presumption that a loss of First Amendment freedoms constituted irreparable harm only when he or she "alleges injury from a rule or regulation that *directly limits*" a First Amendment right. *Bronx Household of Faith*, 331 F.3d at 349 (emphasis added).

Here, Section 2.61's vaccine requirement does not  directly limit a First Amendment right as it does not compel plaintiffs to be vaccinated for COVID-19. Rather, plaintiffs may freely elect not to be vaccinated, but in doing so may not be permitted to perform work activities "such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." 10 N.Y.C.R.R. § 2.61(a)(1).

---

[6] The Department of Education, not the Department of Health, regulates the licensure and certification of medical professionals. *See, e.g.*, 8 N.Y.C.R.R. §§ 60, 63, 64.

**POINT III**

**THE EQUITIES BALANCE IN FAVOR OF THE STATE'S EFFORTS TO PROTECT THE PUBLIC HEALTH DURING THE EXISTING PANDEMIC, AND ISSUANCE OF A PRELIMINARY INJUNCTION IS NOT IN THE PUBLIC INTEREST**

Because Plaintiffs cannot establish the likelihood of success on the merits of their claims, or irreparable harm, the court need not consider "the public's interests in a temporary restraining order or the balance of the equities." *Amato v. Elicker*, 2020 U.S. Dist. LEXIS 87758, at \*\*38-39 (D. Conn. May 19, 2020).

In any event, Plaintiffs' request for a preliminary injunction must be denied because the equities balance in favor of continuing the State's vaccination requirement under Section 2.61. It is well-established that a "preliminary injunction may not issue unless the movant clearly shows that the balance of equities favors the movant" *Litwin v. OceanFreight, Inc.*, 865 F. Supp. 2d 385, 401–02 (S.D.N.Y. 2011) (citation omitted). As discussed above, Plaintiffs have not established that they will suffer irreparable harm if the Court denies the requested injunction. In light of Plaintiffs' failure to show irreparable harm, the balance of the equities plainly weigh in favor of denying interim equitable relief. *See Winter*, 555 U.S. at 20.

Likewise, the public interest favors the continuation of the State's vaccination requirement under Section 2.61 with a religious exemption. As discussed above, this emergency regulation was promulgated as part of the State's ongoing efforts to curb the spread of the deadly COVID-19 virus, which continues to pose a significant public health threat. Increasing the number of people, particularly health care workers, who receive the vaccine undoubtedly serves that vital objective. According to the CDC, to date, 557,585 health care personnel have contracted COVID-19, and 1,768 have died of COVID-19. Rausch-Phung Dec. ¶ 54. Patient-facing healthcare workers, like those covered by Section 2.61, have a threefold risk of hospital admission if they contract COVID-19, and their family members have a twofold risk. *Id.* The spread of COVID-19 among healthcare

24

workers also imposes staffing burdens on already strained hospital and healthcare operations due to quarantining requirements and potential length of illness when healthcare workers become infected. *Id.* ¶ 58.

Moreover, widespread vaccination protects the vulnerable patient populations served by healthcare workers, including the elderly and the immunocompromised. *Id.* ¶ 55. Vaccinating healthcare workers also protects unvaccinated patients, as COVID-19 vaccines are associated with fewer infections overall and less risk of transmission. *Id.* ¶ 56.

In short, "[s]temming the spread of COVID-19 is unquestionably a compelling interest," *Hopkins Hawley LLC v. Cuomo*, 518 F. Supp. 3d 705, 717 (S.D.N.Y. 2021) (quoting *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020)); *see also Garcia v. New York City Dep't of Health & Mental Hygiene*, 31 N.Y. 3d 601, 612 (2018) ("Undisputedly," there is a "very direct connection" between vaccination rules and "the preservation of health and safety."); *F.F. ex rel. Y.F. v. State*, 65 Misc. 3d 616, 633 (Sup. Ct. Albany Cty. 2019) ("Protecting public health" through the use of vaccines "has long been recognized as the gold standard for preventing the spread of contagious diseases" and "is unquestionably a compelling [public] interest"), *aff'd*, 194 A.D.3d 80 (3d Dep't 2021).

## POINT IV

## PLAINTIFFS SHOULD NOT BE GRANTED AN INJUNCTION PENDING APPEAL

Plaintiffs request that, in the event their request for a preliminary injunction is denied by this Court, they should be granted an injunction pending appeal. Pls.' Memo. of Law, ECF No. 5-1 at p. 22. Under Federal Rule of Appellate Procedure 8(a), a party must "move first in the district court for" an order "granting an injunction while an appeal is pending" before seeking such relief