USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/26/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEPHANIE GRIMES,

                                Plaintiff,

                    -against-

THE NEW YORK AND PRESBYTERIAN
HOSPITAL,

                                Defendant.

1:23-cv-652 (MKV)

**OPINION AND ORDER
GRANTING IN PART
AND DENYING IN PART
MOTION TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

This case arises out of Plaintiff's termination after her failure to comply with the NYS

COVID-19 Vaccine Mandate.   Plaintiff Stephanie Grimes, a former Quality Management

Specialist at New York Presbyterian Hospital ("NYPH"), asserts twelve different claims under

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the Americans

with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), the Age Discrimination in

Employment Act of 1967, 29 U.S.C. §§ 621–634 ("ADEA"), and state common law.   Defendant

NYPH moves to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6).   For the

reasons below, the motion to dismiss is GRANTED in part and DENIED in part.

## BACKGROUND[1]

### *Onset of COVID Pandemic*

Grimes began working for NYPH as a Quality Management Specialist in 2002.   Amended

Complaint ¶ 15 [ECF No. 11] ("Am. Compl." or "the Complaint").   Grimes reported directly to

Tamara Rudich, Director of Analytics, and Irene Louh, MD.   Am. Compl. ¶ 15.   Throughout the

---

[1] The facts are taken from the Amended Complaint, and for purposes of this motion, are accepted as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Notwithstanding the Court's obligation to accept *the facts* alleged in the Amended Complaint as true, this "tenet . . . is inapplicable to legal conclusions" and "mere conclusory statements," *id.*, which the Amended Complaint frequently employs throughout.  *See e.g.*, Am. Compl. ¶¶ 42, 44, 45, 61, 62, 65.

course of her employment, Grimes was regarded as a hard-working and dedicated employee with an unblemished record.  Am. Compl. ¶ 16.  She was also one of the first individuals in her department to work remotely and, with the exception of her required attendance at a monthly department meeting, had been doing so for approximately 15 years prior to her termination. Am. Compl. ¶ 17.

In early 2020, COVID-19 emerged.  In mid-2021, NYPH began to implement its own COVID protocols.  Am. Compl. ¶ 28.  One such protocol notified all employees that they must receive their first dose of the COVID vaccine by August 6, 2021 or obtain an approved exemption. Am. Compl. ¶ 28.  Grimes sought a religious exemption, asserting that her "deeply held religious beliefs . . . conflicted with receiving a vaccine."  Am. Compl. ¶ 28.  NYPH subsequently approved Grimes's religious exemption on or about August 22, 2021.  Am. Compl. ¶ 29.

### NYS Department of Health Implements Mandate

A few days later, the New York State Department of Health ("DOH") issued an emergency regulation mandating that hospitals require medically eligible "personnel" to be fully vaccinated against COVID.  N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61 (2022) ("DOH Mandate").  The DOH Mandate defined covered "personnel" as "all persons employed . . . with a covered entity . . . who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease."  DOH Mandate § 2.61(a)(2).

After the DOH Mandate was announced, NYPH informed Grimes by email that the DOH "made the determination to *exclude* religious exemptions" to the vaccine mandate, and as such, her previously approved religious exemption under NYPH's own COVID protocol would be rescinded.  Am. Compl. ¶ 29.  The email further provided that all eligible staff must receive the first dose of the vaccine or have an approved *medical* exemption no later than September 15, 2021.

Am. Compl. ¶¶ 34, 36.

The same day that NYPH notified Grimes that her religious exemption would be rescinded, Grimes inquired about a possible medical exemption from the vaccine. Am. Compl. ¶ 30. Grimes alleges that she has suffered from a variety of autoimmune conditions her entire adult life. Am. Compl. ¶ 21. Grimes further alleges that pre-pandemic, she never had cause to disclose her medical condition to NYPH due to the remote nature of her position. Am. Compl. ¶ 22. However, the vaccine mandate purportedly created a risk for her health, as receiving the vaccination would have "result[ed] in a severe adverse reaction."[2]   Am. Compl. ¶ 30.

Grimes alleges that after she inquired about a possible medical exemption, her director, Rudich "constantly inquired about [her] vaccine status and her ability to get vaccinated," and "at no time were those inquiries . . . consistent with business necessity." Am. Compl. ¶ 31. Grimes alleges that she responded to Rudich's inquiries "by saying she was exempt and did not desire to be vaccinated due to both religious reasons and medical reasons." Am. Compl. ¶ 31. Grimes alleges that, ultimately, her medical exemption was not submitted for review because she was advised by NYPH that it was "too late" to submit a medical exemption. Am. Compl. ¶¶ 34–35.

### The DOH Mandate is Stayed and Plaintiff Submits to Weekly Testing

On September 14, 2021, a federal district court issued an order temporarily enjoining the DOH Mandate to the extent it required employers to deny or revoke already approved or pending religious exemption requests. *See Dr. A. v. Hochul*, 2021 WL 4189533, at *1 (N.D.N.Y. 2021). NYPH emailed its employees, including Grimes, and informed them that pending further guidance from the DOH or the courts, NYPH would be placing a hold on the vaccination process for anyone

---

[2] In the Complaint, Grimes references a September 15, 2021 letter from her doctor, in support of her position that the COVID vaccination would cause her a severe adverse reaction. Am. Compl. ¶ 30. The Complaint states that medical information would be made "available once a protective order is entered between the parties." Am. Compl. ¶ 30. However, a review of the docket reflects that Plaintiff has yet to move for a protective order. Notably, the Complaint does *not* allege that the doctor's letter was ever made available to NYPH or that NYPH was aware of such letter.

who previously had an approved religious exemption prior to the DOH Mandate.  Am. Compl. ¶ 38.  The original requirements for religious exemptions, however, including periodic COVID testing, would still apply in the interim.  Am. Compl. ¶ 38.  Grimes fell into this category.

While the stay was pending, Grimes submitted to the required weekly COVID testing and continued to do so through late-November 2021.  Am. Compl. ¶¶ 48–49, 53.  Grimes alleges that during this time, she discovered that her position, Quality Management Specialist, was posted as an available position on NYPH's intranet.  Am. Compl. ¶ 51.  Notwithstanding Grimes's surprise, she asserts that she continued to comply with the weekly testing requirement "despite the fact that she was a fully remote employee with zero patient and employee contact."  Am. Compl. ¶ 52.

**The DOH Mandate Resumes**

Ultimately, the Second Circuit upheld the DOH Mandate, including its prohibition against blanket religious exemptions.  *See We The Patriots USA, Inc. v. Hochul ("We The Patriots I")*, 17 F.4th 266, 272 (2d Cir. 2021)*; We The Patriots, Inc. ("We The Patriots II")*, 17 F.4th 368, 370 (2d Cir. 2021).  Following the Second Circuit's decisions, NYPH sent out a communication advising its employees that the DOH Mandate did not permit religious exemptions and that all employees were required to receive their first dose of the vaccine by November 22, 2021.  Am. Compl. ¶ 53.  Shortly thereafter, NYPH sent out another email notifying employees that the hospital would consider *reasonable accommodation* requests based on sincerely held religious beliefs, but otherwise, unvaccinated individuals were not permitted to continue in positions where they would interact with staff or patients.  Am. Compl. ¶ 55.

Grimes followed up with NYPH to inquire about an accommodation based on her religious beliefs.  Am. Compl. ¶ 56.  She was informed by NYPH that the leadership team would look into a potential accommodation.  Am. Compl. ¶ 57.  Two days later, NYPH advised Grimes that "[a]fter analyzing [her] request in conjunction with the nature of [her] role and feedback from [her]

4

leadership," she would not be granted an accommodation for her religious beliefs. Am. Compl. ¶ 58; Am. Compl., Ex. H. Specifically, NYPH explained that "because [Grimes was] required to participate in [her] role on-site, [she] would be in contact with patients and staff while on-site and, as such, there [was] no accommodation the State would permit that would not create a financial and/or operational hardship for the Hospital." Am. Compl., Ex. H. Finally, NYPH informed Grimes that she was required to become compliant with the vaccination program **no later than November 29, 2021**, and if she did not, NYPH would consider her "to have resigned . . . for failing to satisfy a condition of continued employment." Am. Compl., Ex. H.

Grimes alleges that she immediately followed up with NYPH by email seeking further clarification on the Hospital's decision to deny her a religious-based accomodation. Am. Compl. ¶ 59. She alleges that, at this time, she also asked NYPH about "her existing application for a medical exemption," Am. Compl. ¶ 59, despite the Complaint's prior allegation that her medical exemption was never submitted for review. *See* Am. Compl. ¶¶ 34–35. At that time, Susan Karp, NYPH's Human Resources Business Manager, responded to Grimes asking several questions with respect to her medical condition, specifically asking whether it had developed before or after the Hospital's August 6, 2021 deadline for medical exemption applications. Am. Compl. ¶ 60.

Grimes alleges that she was "taken aback by the informal and overbroad disability-related inquiry," and replied to Karp's email that she was "uncomfortable disclosing any additional personal protected health information . . . in an email." Am. Compl. ¶ 61.

***Plaintiff is Deemed Voluntarily Resigned***

The November 29, 2021 deadline for Grimes to receive her first dose of the vaccine came and went, but she did not get vaccinated. Am. Compl. ¶ 63. The very next day, Grimes was removed from the company server and deemed voluntarily resigned. Am. Compl. ¶¶ 63, 66. Grimes received a letter memorializing her voluntarily resignation in writing on December 2, 2021.

Am. Compl. ¶ 66.

Grimes filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC").  Am. Compl. ¶¶ 12–14.  The EEOC issued a right to sue letter, Am. Compl. ¶ 13, and Grimes timely filed this action within 90 days of receiving the letter. [ECF No. 1].  She subsequently filed an Amended Complaint ("the Complaint") upon stipulation between the parties and with leave of the Court.  Am. Compl.

The Complaint asserts twelve causes of action against NYPH: (1) disability discrimination under the ADA (Claim One); (2) failure to accommodate or engage in an interactive dialogue under the ADA (Claim Two); (3) unlawful medical examination under the ADA (Claim Three); (4) retaliation based on disability under the ADA (Claim Four); (5) disclosure of confidential medical information under the ADA (Claim Five); (6) hostile work environment based on age under the ADEA (Claim Six); (7) age discrimination under the ADEA (Claim Seven); (8) retaliation based on age under the ADEA (Claim Eight); (9) hostile work environment based on age, religion, and disability under Title VII (Claim Nine); (10) age, religion, and disability discrimination under Title VII (Claim Ten); (11) retaliation based on religion under Title VII (Claim Eleven); and (12) intentional infliction of emotional distress under New York state law (Claim Twelve).  Am. Compl. ¶¶ 76–146.

NYPH now moves to dismiss all claims under Rule 12(b)(6).  *See* Motion to Dismiss [ECF No. 23]; Memorandum of Law [ECF No. 24] ("Def. Mem.").  Grimes opposed the motion.  *See* Memorandum of Law in Opposition to Motion to Dismiss [ECF No. 26] ("Pl. Opp.").  NYPH replied.  *See* Reply Memorandum of Law [ECF No. 27] ("Def. Reply").  Since briefing concluded, NYPH has filed a notice of supplemental authority, *see* [ECF No. 28], and Grimes replied to the notice with a letter.  *See* [ECF No. 20].

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* In considering this motion, the Court "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999).

## ANALYSIS

### I. DISCRIMINATION CLAIMS

First, Grimes contends that NYPH discriminated against her based on (a) her religious beliefs, in violation of Title VII (Claim Ten), (b) her disability, in violation of the ADA (Claim One), and (c) her age, in violation of the ADEA (Claim Seven).[3] Because discrimination claims under these statutes are analyzed under different standards, the Court addresses them separately.

---

[3] The Amended Complaint also alleges that NYPH discriminated against Grimes and subjected her to a hostile work environment *in violation of Title VII* (Claims Nine and Ten) based on her **disability and age**. Am. Compl. ¶¶ 126–34. However, Title VII does not encompass claims for employment discrimination on the basis of age or disability. *See* 42 U.S.C. § 2000e–2; *see also Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 586–87, (2004) ("Congress chose not to include *age* within discrimination forbidden by Title VII . . . ."); *MacEntee v. IBM*, 783 F. Supp. 2d 434, 442 (S.D.N.Y. 2011) ("Title VII does not encompass claims for employment discrimination on the basis of *disability*."), *aff'd*, 471 Fed. Appx. 49 (2d Cir. 2012) *cert. denied*, __ U.S. __, 133 S. Ct. 985 (2013), *reh'g denied*, __ U.S. __, 133 S. Ct. 1751 (2013); *see also Pierre v. Napolitano*, 958 F. Supp. 2d 461 (S.D.N.Y. 2013) ("Title VII does not protect against discrimination on the basis of age or disability."). Accordingly, the Court analyzes Plaintiff's Title VII claims for discrimination and hostile work environment only with respect to the allegations concerning Plaintiff's religious beliefs, which are expressly covered in Title VII.

A. <u>Title VII Claim for Discrimination Based</u>
   <u>on Religious Beliefs (Claim Ten)</u>

Title VII requires a plaintiff asserting a discrimination claim to allege both that the employer discriminated against her, and that the discrimination was because of her religion. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015). Under Title VII, an action is "because of" a plaintiff's religion where her religion was a "substantial" or "motivating" factor contributing to the employer's decision to take the action, even though other factors may have also motivated the practice. *Id.*; *Natofsky v. City of New York*, 921 F.3d 337, 347 (2d Cir. 2019).

The Supreme Court has explained that the rule for discrimination claims "based on a failure to accommodate a religious practice is straightforward: An employer may not make an applicant's religious practice, confirmed or otherwise, a factor in employment decisions." *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 773 (2015); *see also Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) ("In brief, it is 'an unlawful employment practice . . . for an employer not to make reasonable accommodations, *short of undue hardship*, for the religious practices of his employees and prospective employees.' ") (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977)). To that end, a plaintiff may state a *prima facie* claim for religious discrimination under Title VII by "plausibly alleging that he or she 'actually requires an accommodation of [his or her] religious practice' and that 'the employer's desire to avoid the prospective accommodation [was] a motivating factor in [an employment] decision.' " *Lowman v. NVI LLC*, 821 F. App'x 29, 31 (2d Cir. 2020) (quoting *Abercrombie*, 575 U.S. at 773-74) (alterations in original).

NYPH first argues that Grimes has not alleged a *prima facie* case of religious discrimination because the DOH Mandate is a requirement of state law and not an employment requirement. Def. Br. at 9–10. Although the term "employment requirement" has previously been

used in describing the *prima facie* elements of a Title VII claim based on a failure to accommodate, *see, e.g.*, *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156 (2d Cir. 2001), it does not come from the language of the statute itself and thus does not warrant as strict of an interpretation as advocated by NYPH. *Cf. Gulino v. New York State Educ. Dep't*, 460 F.3d 361, 380 (2d Cir. 2006) ("[T]he mandates of state law are no defense to Title VII liability."). Instead, as set forth in *Lowman*, a plaintiff states a claim for religious discrimination under Title VII by plausibly alleging that she "actually requires an accommodation of [her] religious practice." 821 F. App'x at 31 (quoting *Abercrombie*, 575 U.S. at 773). Grimes has done so here. Grimes plausibly alleges that she holds sincere religious beliefs that precluded her from receiving a COVID-19 vaccine and that she required an accommodation that would have allowed her to continue working without running afoul of the Mandate. *See e.g.*, Am. Compl. ¶¶ 23, 24.

Grimes also plausibly alleges that her need for an accommodation was a "substantial" or "motivating" in NYPH's decision to deem her to have resigned. Grimes alleges that NYPH was aware of her religious beliefs (Am. Compl. ¶¶ 27–29), that NYPH did not offer her an accommodation (Am. Compl. ¶¶ 55–59), and that she was deemed to have resigned for failure to comply with the vaccine requirement (Am. Compl. ¶ 66). These allegations are sufficient to make out a *prima facie* case of religious discrimination under Title VII. *See e.g.*, *Abercrombie*, 575 U.S. at 772 n.2 (taking adverse action "because of" the plaintiff's "religious practice" "synonymous with refusing to accommodate the religious practice"); *Lowman*, 821 F. App'x at 31–32.

As such, to avoid liability, NYPH must show that it offered Grimes a reasonable accommodation or that doing so would cause undue hardship. *See Lowman*, 821 F. App'x at 31. Because NYPH did not offer Grimes an accommodation, Am. Compl. ¶ 58, the sole issue before the Court at the pleading stage is whether, *as a matter of law*, reasonably accommodating Grimes would have caused NYPH undue hardship. *See Ansonia Bd. Of Educ. v. Philbrook*, 479 U.S. 60,

68–69 (1986) ("[T]he extent of undue hardship on the employer's business is at issue only where the employer claims that it is unable to offer any reasonable accommodation without such hardship.").

NYPH urges that if it were required to accommodate Grimes by exempting her from the vaccine requirement, it would cause undue hardship as a matter of law, because such an accommodation would require NYPH to violate a state law.  The Court agrees with NYPH that it would suffer an undue hardship if it were required to accommodate Grimes by exempting her from the vaccine requirement *while allowing her to perform work that would require her to be vaccinated under the DOH Mandate*.  Such accommodation would, indeed, require NYPH to violate the law.  *See We The Patriots I*, 17 F.4th at 292.  However, in *We The Patriots II*, the Second Circuit recognized that "it may be *possible* under the [DOH Mandate] for an employer to accommodate—not exempt—employees with religious objections, by employing them in a manner that *removes them from the [Mandate's] definition of 'personnel'* " entirely.  17 F.4th 368, 370 (2d Cir. 2021) (emphasis added).  "Such an accommodation would have the effect under the Rule of permitting such employees to remain unvaccinated while employed."  *Id*.

Grimes plausibly alleges that such an accommodation was possible here.  She specifically alleges that for fifteen years prior to the Mandate's implementation, she worked *fully remotely (with no patient or employee contact)*, with the exception of her attendance at a monthly meeting.  Am. Compl. ¶¶ 22, 26, 52.  Moreover, Grimes alleges that by the time she had been deemed resigned, "her position had ultimately evolved into one that was fully remote . . . and *she had not been on campus for approximately 2 years prior to her wrongful termination*."  Am. Compl. ¶ 17.

NYPH counters that the law does not "require the Hospital to create a new, fully remote position for [Grimes]."  Def. Br. at 13.  NYPH further contends that "although [Grimes] was temporarily permitted to work fully remotely at the height of the pandemic, [Grimes's] job duties

required her to interact with other hospital staff at a monthly meeting, which the AC does not dispute." Def. Br. at 13. While the Court agrees that "[a] reasonable accomodation can never involve the elimination of an essential function of a job," *see Shannon v. New York City Transit Auth.*, 332 F.3d 95, 100 (2d Cir. 2003), when viewing the factual allegations in the light most favorable to the plaintiff, the Court cannot agree that as a matter of law Grimes's attendance at a monthly meeting—which she alleges she had not been required to attend in-person for the two years *prior* to her termination (Am. Compl. ¶ 17)—was an essential job function in an otherwise *fully remote* position.

At the motion to dismiss stage, the Court cannot find as a matter of law that allowing Grimes to *continue* in her fully remote position, while submitting to weekly COVID tests, would have caused NYPH undue hardship.[4] *Brooklyn Ctr. for Indep. of the Disabled v. Metro. Transportation Auth.*, 11 F.4th 55, 62 (2d Cir. 2021) ("[T]he 'reasonableness of an accommodation is a fact-specific question that often must be resolved by a factfinder.' "). NYPH's motion to dismiss Grimes's Title VII discrimination claim is therefore denied.

---

[4] Many courts in this District that have addressed the "undue hardship" issue have come to a different conclusion. However, this case poses a unique, and—in the Court's opinion—a dispositive difference. For fifteen years prior to the DOH Mandate, Grimes worked *fully remotely*, with the caveat that she attend one monthly meeting in person. Grimes's position distinguishes her from the many plaintiffs in this District who have brought similar claims but held *on-site* positions that required frequent or daily contact with others. *See e.g., D'Cunha v. Northwell Health Sys.*, No. 23-476-CV, 2023 WL 7986441, at *1 (2d Cir. Nov. 17, 2023) (medical resident plaintiff who provided "direct patient care"); *Algarin v. NYC Health + Hosps. Corp.*, No. 1:22-CV-8340 (JLR), 2023 WL 4157164, at *2 (S.D.N.Y. June 23, 2023) (IT professional plaintiff who "admittedly worked on site [daily] . . . with co-workers"); *Corrales v. Montefiore Med. Ctr.*, No. 22-CV-3219 (LAP), 2023 WL 2711415, at *5–6 (S.D.N.Y. Mar. 30, 2023) ("receptionist in executive offices" *of the hospital* covered by Section 2.61); *Andre-Rodney v. Hochul*, 618 F. Supp. 3d 72, 78 (N.D.N.Y. 2022) (security officers who worked *at hospitals* covered by Section 2.61); *Shahid-Ikhlas v. New York And Presbyterian Hosp., Inc.*, No. 22-CV-10643 (GHW) (SDA), 2023 WL 3628151, at *5 (S.D.N.Y. May 5, 2023), *report and recommendation adopted sub nom. Shahid-Ikhlas v. New York & Presbyterian Hosp., Inc.*, No. 22-CV-10643 (GHW) (SDA), 2023 WL 3626435 (S.D.N.Y. May 24, 2023) (staff nurse for the Critical Care - Coronary Care Unit covered by Section 2.61).

B.  Claim for Disability Discrimination
    Under the ADA[5] (Claim One)

Grimes further alleges that NYPH discriminated against her based on her disability in a variety of ways, including failing to reasonably accommodate her underlying medical conditions. Under the ADA, to "discriminate against a qualified individual on the basis of disability" includes "not making reasonable accommodations to the *known* physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  42 U.S.C. § 12112(b)(5)(A) (emphasis added).

A plaintiff makes out a *prima facie* case of disability discrimination arising from a failure to accommodate by showing each of the following: "(1) [P]laintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations."  *McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 96–97 (2d Cir. 2009) (citations omitted).  NYPH argues that Grimes fails to allege that she provided NYPH notice of her disability, and that she only ever made "general inquiries" about a medical exemption.  Def. Br. at 17.  The Court finds that, based on her own allegations, Grimes has failed to state a disability-claim under the ADA.

An "employee possesses the initial responsibility to inform the employer that [s]he needs an accommodation *and to identify the limitation that needs accommodating*."  *Conway v.*

---

[5] In passing, Grimes alleges that "[t]here is a prevailing notion that those who are unvaccinated are perceived as disabled."  Am. Compl. ¶ 72.  To the extent that this single allegation in the Amended Complaint suggests that NYPH perceived Grimes as disabled based on her unvaccinated status, courts in this District have repeatedly rejected this theory by plaintiffs challenging work-related COVID-19 policies.  *See, e.g.*, *Newell v. State Univ. of New York Westchester Cmty. Coll.*, 2023 WL 4082030, at *3–4 (S.D.N.Y. 2023); *D'Cunha v. Northwell Health Sys.*, 2023 WL 2266520, at *5 (S.D.N.Y. 2023).

*Healthfirst Inc.*, No. 21-CV-6512 (RA), 2022 WL 4813498, at *5 (S.D.N.Y. Sept. 30, 2022) (emphasis added).  "At this point, the employer must make a reasonable effort to determine an appropriate accommodation based on the particular job involved and consultation with the employee" in what is known as the interactive process.  *Id*.  However, "[t]o trigger the duty to engage the interactive accommodations process, the employer must have known, or have had sufficient notice such that the employer reasonably should have known, that the employee has a disability *within the meaning of the Act, as opposed to a mere impairment*."  *Costabile v. New York City Health & Hosps. Corp.*, 951 F.3d 77, 82 (2d Cir. 2020) (emphasis added).

Grimes fails to allege any facts suggesting that she ever informed NYPH as to the nature and/or extent of her medical condition such that NYPH knew or should have known that she had a disability "*within the meaning of the [ADA], as opposed to a mere impairment*."  *Id*.  In fact, as Grimes alleges, she suffered from Autoimmune Conditions for 15 years, "[which] did not prevent [her] from . . . work[ing] without any accommodations."  *Costabile*, 951 F.3d at 82; Am. Compl. ¶ 22 ("While Plaintiff always suffered from her autoimmune conditions, it was never an issue as Plaintiff worked remotely for approximately 15 years.  Plaintiff had no need to disclose her private medical information until September 2021, since she was always able to perform her job functions without issue").  Instead, Grimes all but concedes that she did not provide NYPH with any notice of her actual disability.  *See* Am. Compl. ¶ 22 (stating she "had no need to disclose her private medical information"); Am. Compl. ¶ 30 n.1 (declining to provide medical information); Am. Compl. ¶ 32 (acknowledging that her medical exemption "was not submitted for review"); Am. Compl., Ex. J (stating vaguely that she "ha[d] a valid medical exemption . . . that precludes [her] from receiving the Covid vaccine"); Am. Compl., Ex. K (Grimes stating, "I am uncomfortable disclosing any additional personal protected health information to you.").

To be sure, Grimes alleges that she *generally* inquired at least twice regarding a possible

"medical *exemption*" from the Mandate.[6]  Am. Compl. ¶¶ 30–32.  "But this alone is insufficient to plausibly allege notice that [any medical condition] constituted a disability under the Act." *Costabile*, 951 F.3d at 82; *see also Conway v. Healthfirst Inc.*, No. 21-CV-6512 (RA), 2022 WL 4813498, at *6 (S.D.N.Y. Sept. 30, 2022) (holding plaintiff failed to allege any facts suggesting that his employer had notice of his disability, as he only alleged that he contacted employer representatives "ask[ing] about possible work accommodations and steps to initiate the process."). The exhibits attached to the Complaint make clear that the first time Grimes requested an *accomodation* from the Mandate based on her purported disability (rather than based on her religious beliefs) was in a November 30, 2021 email.  By that time, the November 29 deadline to receive her first dose of the vaccine had expired, and she was deemed voluntarily resigned. Am. Compl. ¶¶ 63, 66.

Because Grimes has failed to plausibly allege that NYPH knew or should reasonably have known she was disabled within the meaning of the ADA, NYPH was under no obligation to initiate an interactive process.  Thus, Grimes's failure to affirmatively request an accommodation based on her disability until after the deadline to receive her first dose of the vaccine warrants dismissal of her ADA disability discrimination claim.

---

[6] The DOH Mandate authorizes a medical *exemption* to the DOH Mandate's vaccination requirement only "[i]f any licensed physician or certified nurse practitioner certifies that immunization with COVID-19 vaccine is detrimental to the health of [the employee], based upon a pre-existing health condition." N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61(d)(1) (2021). "The nature and duration of the medical exemption must be stated in the personnel employment medical record, or other appropriate record . . . ." *Id.*  While the Complaint references a September 15, 2021 letter from Grimes's doctor recommending that she not be vaccinated due to Autoimmune Conditions, Am. Compl. ¶ 30, Grimes does not allege that she ever provided this letter to NYPH.  Indeed, her subsequent allegations, *see* Am. Compl. ¶ 61, Am. Compl., Ex. 10, suggest that she did not.

C.  Claim for Age Discrimination Under
the ADEA (Claim Seven)

Grimes asserts in Claim Seven an age discrimination claim under the ADEA.  In order to

state a discrimination claim under the ADEA, Grimes "must plausibly allege that [she] would not

have been terminated *but for* [her] age."  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293,

303 (2d Cir. 2021) (emphasis added).  In other words, unlike Title VII discrimination claims, under

the ADEA, Grimes must plausibly allege that age was the "but-for" cause of NYPH's alleged

discrimination, not simply a motivating factor.[7]  *See e.g.*, *Gross v. FBL Financial Services, Inc.*,

557 U.S. 167, 129 (2009); *see also Natofsky*, 921 F.3d at 348.  Specifically, Grimes must plead

facts plausibly suggesting "that age was the 'reason' that [NYPH] decided to act," *Gross*, 557 U.S.

at 176; *see also Lively*, 6 F.4th at 306.

Grimes fails to plausibly allege that her age was the but-for cause of her termination.  The

only factual allegation relating to age in the Complaint is Grimes's allegation that she was replaced

by an employee whom she believes was 39 years old, and that replacement was also succeeded by

an employee whom Grimes believes was 33 years old.  *See* Am. Compl. ¶ 68.  Grimes urges that

this sole factual allegation "giv[es] rise to the inference that *at least part* of the decision to

unlawfully, unjustly and wrongfully terminate the plaintiff was predicated on her age."

Am. Compl. ¶ 68 (emphasis added).

However, an ADEA discrimination claim cannot survive a motion to dismiss based on such

an allegation, since a charge that there is an inference that "*at least part* of the decision . . . was

---

[7] Application of the but-for causation standard at the pleading stage is not affected by the *McDonnell Douglas* burden-shifting framework.  *Lively*, 6 F.4th at 303.  "Under *McDonnell Douglas's* terms, . . . only the burden of production ever shifts to the defendant, never the burden of persuasion," and so *McDonnell Douglas* "provide[s] no basis for allowing a complaint to survive a motion to dismiss when it fails to allege essential elements of a plaintiff's claim." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, __ U.S. __, 140 S. Ct. 1009, 1014 (2020); *see Gross*, 557 U.S. at 177 ("[U]nder § 623(a)(1), the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action.").

predicated on her age," necessarily means age was not the "but-for" cause of the decision. Am. Compl. ¶ 68.  Nor can a *prima facie* claim of discriminatory motive be made solely on the basis of allegations that a plaintiff was replaced by younger persons where, as here, the "amended complaint . . . is nearly bereft of any specific facts to support this conclusion." *Marcus v. Leviton Mfg. Co., Inc.*, 661 F. App'x 29, 32 (2d Cir. 2016) ("Without more, the mere fact that an older employee was replaced by a younger one does not plausibly indicate discriminatory motive."); *see also Cocca-Rau v. Standard Insurance Company*, 2020 WL 4207442, at *8 (S.D.N.Y. 2020) (finding that a single allegation that plaintiff "was replaced by much younger . . . workers" was insufficient to give rise to inference of discriminatory causality).

Moreover, Grimes's conclusory and self-serving allegation that her termination was "motivated by considerations of the costs of her salary, health insurance premium, and potential pension rights," is devoid of any factual support, is wholly speculative, and is equally unconvincing.  Am. Compl. ¶¶ 111–12.  "Such skeletal pleading provides no more than 'naked assertions devoid of further factual enhancement' and does not allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Marcus*, 661 F. App'x at 32 (quoting *Iqbal*, 556 U.S. at 678 (internal citations omitted)).  Accordingly, Grimes fails to plead a claim of age discrimination under the ADEA and Claim Seven is dismissed.

## II.   RETALIATION CLAIMS

Grimes also alleges various forms of purported retaliation that NYPH took against her, including posting her position to NYPH's intranet (Am. Compl. ¶ 51), revoking her access to NYPH's internal system (Am. Compl. ¶ 64), and ultimately terminating her (Am. Compl. ¶ 66). Grimes contends that these retaliatory acts were because of her religious beliefs in violation of Title VII (Claim Eleven), based on her disability in violation of the ADA (Claim Four), and based on her age in violation of the ADEA (Claim Eight).

Retaliation claims under all three statutes are analyzed using the same framework, regardless of the alleged basis for the retaliation (*i.e.*, race, religion, disability). Thus, for any of Grimes's retaliation claims to survive a motion to dismiss, she must plausibly allege: (1) participation in an activity *protected by the relevant statute*; (2) that NYPH knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *See Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015) (quoting *Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010)) (addressing standard for retaliation claims under Title VII); *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) (applying framework to ADEA retaliation claims); *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 222–23 (2d Cir. 2001) (applying framework to ADA retaliation claims).

    A.    <u>Claims for Retaliation Based on Religious</u>
             <u>Beliefs Under Title VII and Disability Under</u>
             <u>the ADA (Claims Eleven and Four)</u>

Grimes alleges that NYPH retaliated against her based on her religion in violation of Title VII (Claim Eleven) and based on her disability in violation of the ADEA (Claim Four). Specifically, she contends that she engaged in protected activities when she sought an accommodation "under Title VII as it concerned her closely held religious convictions," and under "the ADA as it concerned her Autoimmune Conditions." Am. Compl. ¶¶ 101, 138. NYPH argues that Grimes fails to allege a causal connection between her assertion of her religious convictions or her purported disability, and the ultimate decision to separate her for refusal to obtain the vaccine. Def. Br. at 23–25.

Retaliation claims under both Title VII and the ADA require a plaintiff to plausibly allege that her protected activity was a "but-for" cause of the alleged adverse action by the employer. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, __ U.S. __, 133 S. Ct. 2517, 2533 (2013). In other

words, "[i]t is not enough that retaliation was a "substantial" or "motivating" factor in the employer's decision. *See Vega*, 801 F.3d at 90–91 (citing *Nassar*, 133 S.Ct. at 2533). Grimes must plausibly allege that "the adverse action would not have occurred in the absence of the retaliatory motive." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir.2013).

Grimes alleges that she was locked out of the NYPH system, and deemed voluntarily resigned on November 30, 2021, in retaliation for her assertion of her religious convictions and for her disability. Am. Compl. ¶¶ 64, 70. However, Grimes concedes—through her own allegations—that on September 14, 2021, *prior to any request for an accomodation from the Mandate* and over two months prior to her termination, she was expressly informed that "[e]mployees who do not comply with the vaccination program by the [September 23] deadline [would] be . . . locked out of NYP[H] systems." Am. Compl. ¶ 38. The Complaint further affirmatively alleges that in the September 14, 2021 email, NYPH warned *all* employees that those "who meet the [vaccine] requirements by September 22 would be able to return to work." Am. Compl., Ex. 4.

In other words, contrary to Grimes's claims that her termination and restriction from NYPH systems constituted retaliation based on religious or disability animus, Grimes was expressly warned—along with all other NYPH employees—that noncompliance with the DOH Mandate would result in these precise consequences. *Adams v. New York State Unified Ct. Sys.*, No. 22-CV-9739 (JMF), 2023 WL 5003593, at *4 (S.D.N.Y. Aug. 4, 2023) (dismissing Title VII retaliation claim because "even if [plaintiff] had not [engaged in a protected activity], she still would have been terminated based on her failure to get vaccinated"); *Evans v. New York City Dep't of Educ.*, No. 22-CV-7901 (ER), 2023 WL 8034449, at *8 (S.D.N.Y. Nov. 20, 2023) (dismissing ADA retaliation claim for failure to show a causal connection between protected activity and termination where "COVID policy applied to all employees and plaintiff's own pleadings showed

18

he was disciplined as a consequence of the refusal to comply with the policy)"; *Johnson v. Mount Sinai Hosp. Grp., Inc.*, 2023 WL 2163774 (AMD), at *7 (E.D.N.Y. Feb. 22, 2023) (dismissing ADA retaliation claim for failure to show a causal connection between protected activity and termination, where the plaintiff's refusal to comply with the hospital employer's COVID-19 policies adopted *before* plaintiff's request for an accomodation was "clearly the basis for her termination").

Grimes has failed to allege a causal connection between her request for a reasonable accommodation for her religious beliefs and the decision to separate her for refusing to obtain the vaccine.  And even assuming NYPH was aware of Grimes's health condition, *see supra* at Section I.B., Grimes has also failed to allege a causal connection between her purported request for a reasonable accomodation for her medical condition and the decision to separate her for refusing to obtain the vaccine.  Put differently, Grimes's separation followed ineluctably from the policy that NYPH announced in connection with the DOH Mandate *before* Grimes requested a religious or health-related accomodation under that Mandate.  Grimes's own allegations establish that even if Grimes had not requested an accomodation (whether for her religious beliefs or her medical condition), she still would have been terminated based on her failure to get vaccinated.  Am. Compl. ¶ 29, Am. Compl., Ex. 4.  Accordingly, NYPH's motion to dismiss Grimes's retaliation claims under Title VII (Claim Eleven) and the ADA (Claim Four) is granted.

      B.  Claim for Retaliation Based on Age
            Under the ADEA (Claim Eight)

Grimes also alleges that NYPH retaliated against her based on her age in violation of the ADEA.  Grimes fails to plead an ADEA retaliation claim because she fails to plausibly allege that she engaged in an activity protected *under the ADEA*.  A plaintiff engages in a protected activity under the ADEA if she has "a good faith, reasonable belief that [s]he [is] opposing an employment

practice made unlawful *by . . . [the ADEA]*." *Kessler v. Westchester Cty. Dep't of Soc. Servs.*, 461 F.3d 199, 210 (2d Cir. 2006) (emphasis added) (quoting *McMenemy v. City of Rochester*, 241 F.3d 279, 285 (2d Cir. 2001)).

Here, Grimes fails to provide any facts demonstrating that she believed that "[s]he was opposing an employment practice made unlawful by" *the ADEA* during her employment at NYPH. *Kessler*, 461 F.3d at 210. Rather, the Complaint makes abundantly clear that Grimes opposed the mandatory vaccination due to her religious beliefs. *See e.g.*, Am. Compl. ¶ 50 ("[W]e suspect this is done intentionally, because of Plaintiff's legal and lawful opposition to the vaccination); *Id*. at ¶ 51 ("[S]he didn't want to inquire internally for risk of being further retaliated against for her lawful and legal opposition to the vaccination . . ."); Am. Compl., Ex. 2. ("I object to mandatory Covid vaccination because the vaccines are either developed, tested or produced using aborted-derived fetal cell lines.").

Grimes fails to plead any facts even remotely suggesting that she ever complained of, or in any way opposed, an employment practice related to *age* discrimination. *Cf. Lopez v. New York City Dep't of Educ.*, No. 17-CV-9205 (RA), 2020 WL 4340947, at *10 (S.D.N.Y. 2020) (finding complaints to employer school about student safety and treatment did not constitute "protected activity" under ADEA); *McCalman v. Partners in Care*, No. 01-CV-5844 (FM), 2003 WL 22251334, at *6 (S.D.N.Y. 2003) (finding complaints to Department of Health about employer's non-age-related practices did not constitute "protected activity" under ADEA). Accordingly, Grimes fails to plausibly allege that she engaged in an activity protected *under the ADEA*, and her claim for retaliation under this statute (Claim Eight) must be dismissed.

## III.    HOSTILE WORK ENVIRONMENT CLAIMS

Grimes next argues that NYPH subjected her to a hostile work environment based on her religious beliefs in violation of Title VII (Claim Nine) and based on her age in violation of the

ADEA (Claim Six).  To prevail on a hostile work environment claim under either Title VII or the

ADEA, a plaintiff must allege: (1) she was subjected to harassment, *based on her protected class*,

that was "sufficiently severe or pervasive to alter the conditions of the victim's employment and

create an abusive working environment," and (2) "that a specific basis exists for imputing the

objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir.2002)

(internal citation omitted); *see also Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013).

Moreover, courts have found it important in hostile work environment cases "to exclude from

consideration personnel decisions that lack a linkage or correlation to the claimed ground of

discrimination." *Alfano*, 294 F.3d at 377.  Both hostile work environment claims fail here.

### A. Hostile Work Environment Based on Religious Beliefs Under Title VII (Claim Nine)

Grimes argues that NYPH subjected her to a hostile work environment based on her

religious beliefs because NYPH maintained a workplace "permeated with discriminatory

intimidation and illegal tactics used to pressure the Plaintiff" into receiving the vaccination, and

"engaged in a practice of ridicule and insult that was sufficiently severe and pervasive so as to alter

the conditions of the Plaintiff's employment and created a hostile and abusive working

environment."  Am. Compl. ¶ 101.

As a threshold matter, the Complaint is virtually devoid of any non-conclusory factual

allegations to support a religiously hostile work environment claim.   Grimes's conclusory

assertions that NYPH engaged in "discriminatory intimidation," "illegal tactics," and "ridicule and

insult" are both limited and vague.  Her statement that she "became the target of severe, unrelenting

harassment," Am. Compl. ¶ 18, is equally vague.  And none of these conclusory allegations rise

to the level of "severe or pervasive" harassment motivated by religious animus required to make

out a claim for a hostile work environment. *See Lucio v. N.Y.C. Dep't of Educ.*, 575 F. App'x 3,

5 (2d Cir. 2014) (affirming dismissal of hostile work environment claims based on failure to plead any specific facts indicating causation); *Salas v. N.Y.C. Dep't of Investigation*, 298 F. Supp. 3d 676, 684 (S.D.N.Y. 2018) (dismissing claim where the plaintiff did "not allege[] sufficient non-conclusory facts to support her hostile-work-environment claim under Title VII."); *Dechberry v. New York City Fire Dep't*, 124 F. Supp. 3d 131, 158 (E.D.N.Y. 2015) (dismissing hostile work environment claim where the plaintiff "only allege[d] in a conclusory manner that defendants 'engaged in hostile work environment discrimination' and that she suffered 'disrespectful treatment, retaliation and harassment' ").

Nor can the alleged instances in which the Hospital merely reminded Grimes of the consequences of noncompliance with the DOH Mandate, *see* Am. Compl. ¶¶ 34, 57, plausibly be read to constitute "harassment . . . sufficiently severe or pervasive" to "create an abusive working environment."  *Summa*, 708 F.3d 115, 124 (2d Cir. 2013); *see also Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (allegations that African-American employee's supervisor made negative statements about employee to another supervisor, distanced herself from employee when she was nearby, declined to meet with employee, and wrongfully reprimanded employee were insufficient to state hostile work environment claim).

Grimes further alleges that a NYPH nurse practitioner was "aggressive" in administering her weekly COVID test, and that as a result the tests were "unbelievably painful."  Am. Compl. ¶¶ 49–50.  The Court does not discount the discomfort that accompanies COVID testing—a sentiment to which millions of Americans who have been subjected to such tests these past several years would likely agree.  However, Grimes's contention that the administration of her weekly tests cultivated such a "severe and pervasive" hostile environment, so as to render it "abusive" is simply implausible.  More importantly, such a contention is undercut by Grimes's own allegations.  She expressly alleges that after she raised a complaint with respect to the nurse practitioner's

administration, NYPH permitted her to test at locations of her choosing, which she subsequently did.  Am. Compl. ¶ 52.

Finally, while Grimes alleges that the nurse practitioner was an NYPH employee, Grimes fails to allege that the nurse practitioner's actions were in any way motivated by religious animus. Grimes alleges that the nurse practitioner acted "unprofessional" and "aggressive," but even if that were true, Grimes "must still allege that [her religion] was the motivating factor behind any workplace hostility," and there are simply no such allegations to suggest that *the nurse practitioner* acted with religious animus.  *Boonmalert v. City of New York*, 721 F. App'x 29, 34 (2d Cir. 2018); *see also Alfano*, 294 F.3d at 377.  As a result, Claim Nine is dismissed.

### B.    Hostile Work Environment Based on
####      Age Under the ADEA (Claim Six)

The Court has already discussed, in depth, the lack of factual allegations in the Complaint related to Grimes's age.  *See supra* at Sections I.B, II.B.  The Court again finds that Grimes has failed to plead an ADEA claim because she fails to plausibly allege that any of NYPH's alleged actions in the Complaint were "based on her age."  *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) (dismissing hostile work environment under the ADEA as a matter of law because the alleged "instances of hostility recounted by [plaintiff] had *nothing to do with age*.") (emphasis added); *see also Bernstein v. New York City Dep't of Educ.*, No. 19-CV-11816 (LJL), 2021 WL 4429318, at *1 (S.D.N.Y. Sept. 27, 2021), *aff'd*, No. 21-2670, 2022 WL 1739609 (2d Cir. May 31, 2022) (granting motion to dismiss age-based hostile work environment claim because plaintiff "did not allege facts supporting a hostile work environment *based on age*") (emphasis added).  Accordingly, Grimes has failed to allege a *prima facie* claim for hostile work environment under the ADEA and Claim Six is dismissed.

## IV.    REMAINING ADA CLAIMS

Grimes claims additional violations under the ADA for: (1) failure to accommodate or engage in interactive dialogue (Claim Two); (2) unlawful medical examination (Claim Three); and (3) disclosure of confidential medical information (Claim Five).  Am. Compl. ¶¶ 83–95, 103–08.

### A.  Failure to Accommodate or Engage in an Interactive Dialogue (Claim Two)

Grimes brings separate claims for disability discrimination under the ADA (Claim One) and failure to accommodate under the ADA (Claim Two).  In doing so, Grimes inappropriately attempts two bites at the "failure to accommodate" apple, dressing up her claim under different theories.  As previously discussed, Grimes's disability *discrimination* claims rely, almost exclusively, on NYPH's alleged denial of a reasonable accommodation.  The Second Circuit has consistently interpreted failures to accommodate as a basis for *discrimination* claims.  *See e.g.*, *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) ("In *discrimination* claims *based* both on adverse employment actions and on failures to accommodate, the plaintiff . . .") (emphasis added); *see also McBride*, 583 F.3d at 96 ("[A] plaintiff makes out a *prima facie* case of disability *discrimination **arising from*** a failure to accommodate by showing . . .").

Thus, the Court analyzes Grimes's arguments that NYPH failed to accommodate her disability as part of her discrimination claim brought under the ADA in Section II.B.  *Cf. Berger v. New York City Police Dep't*, 304 F. Supp. 3d 360, 369 (S.D.N.Y. 2018).  In doing so, the Court concluded that because Grimes failed to plausibly allege that NYPH knew or should reasonably have known she was disabled within the meaning of the ADA, NYPH was under no obligation to initiate an interactive process.  *See supra* at Section II.B.

Claim Two adds allegations that NYPH failed to engage in an interactive dialogue.  But despite implementing regulations under the ADA that explicitly reference the "interactive

process," *see* 29 C.F.R. § 1630.2(o)(3), the Second Circuit has held that "there is no valid independent claim under the ADA for failure to engage in an interactive process[.]" *Sheng v. M&T Bank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017).  Claim Two is accordingly dismissed.

      B.  <u>Disclosure of Medical Information (Claim Five)</u>

The ADA provides that all medical information gained as a result of an examination or inquiry must be kept confidential in a separate file by the employer and can be disclosed only to a limited group of individuals, such as the employee's supervisors or managers, safety personnel, or the government when it is investigating an employer's compliance with the ADA.  42 U.S.C.§ 12112(d)(3)(B); 29 CFR § 1630.14.  Grimes claims that the NYPH violated 42 U.S.C. § 12112 by allegedly disseminating her confidential medical information when it emailed her inquiries regarding her medical condition, which "copied multiple employees who [did] not have a need to know the [her] medical information."  Am. Compl. ¶¶ 103–08 (Claim Five).

Grimes's claim fails because the Complaint, and its attached exhibits, admit that Grimes never actually disclosed any medical information via the emails that "copied multiple employees." Am. Compl. ¶¶ 103–08.  In fact, Grimes concedes that she did not share information in response to certain of Karp's (NYPH's Human Resources Business Manager) email inquiries, stating that "she was uncomfortable disclosing any additional personal protected health information than what was already provided, especially in an email."  Am. Compl. ¶ 61.

Indeed, the only statement that Karp made via email was *in response* to Grimes first stating, "I also have a valid medical exemption from September 15th that precludes me from receiving the Covid vaccine."  *See* Am. Compl., Ex. 10.  Karp merely replied, "Is this a new medical condition that was developed after the August 6th deadline for submitting medical exemptions or is this a long standing medical condition for which you received the doctors [sic] note on September 15th?"  Am. Compl., Ex. 10.  Grimes then replied that she was "uncomfortable disclosing any additional

personal protected health information," and no further medical discussions were had.  Amended Complaint, Ex. 10.

Whether or not Karp's questions amounted to unlawful medical inquiries under Section 12112 is a separate matter analyzed below with respect to Grimes's Unlawful Medical Exam claim (Claim Three).  However, other than Grimes's *own* statement that she had "a valid medical exemption," the emails attached to the Complaint belie any conclusory allegations, *see e.g.*, Am. Compl. ¶¶ 105–08, that NYPH improperly *disseminated or disclosed* Grimes's confidential medical information.[8]  Claim Five is therefore dismissed.

C.  Unlawful Medical Exam (Claim Three)

Grimes claims that NYPH further violated 42 U.S.C. § 12112 by asking her for additional information regarding her purported medical condition, which was "improper" and "not tied to any business necessity."  Am. Compl. ¶¶ 89–95 (Claim Three).  The ADA specifies that an employer is prohibited from requiring a medical examination or inquiring as to an employee's disability "*unless such examination or inquiry is shown to be job-related and consistent with business necessity*."  42 U.S.C. § 12112(d)(4)(A).  "Relatively little case law," however, concerns the proper interpretation of "business necessity" in this context.  *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 97 (2d Cir. 2003).

The EEOC instructively provides that "disability-related inquiries and medical examinations that follow up on a request for reasonable accommodation when the disability or need for accommodation is not known or obvious [] *may* be job-related and consistent with

---

[8] Nor does Exhibit 11 of the Amended Complaint save Claim Five.  The emails in this exhibit reflect Tammy Rudich, Grimes's *director*, contacting Grimes to inform her that Karp was waiting to hear back from Grimes regarding her medical exemption, and asking her to follow up.  Am. Compl., Ex. 11.  First, Rudich expressly states, "Susan did not share any medical information."  *Id.*  Second, Section 12112 explicitly allows confidential medical information to be "disclosed . . . to a limited group of individuals, such as the employee's *supervisors or managers*."  42 U.S.C.§ 12112(d)(3)(B); 29 CFR § 1630.14.

business necessity."  EEOC, *Enforcement Guidance on Disability-Related Inquiries and Medical Examinations of Employees under the ADA*.[9]  Notwithstanding, the Second Circuit has fashioned "business necessity" as a "defense," the standard for which is "quite high." *Conroy*, 333 F.3d at 97. In order to demonstrate business necessity, "*an employer must show* more than that its inquiry is consistent with 'mere expediency.' "  *Id*.  Instead, "*the employer must first show* that the asserted 'business necessity' is vital to the business." *Id*. (emphasis added).

At the summary judgment and trial stages, the Second Circuit has found that medical inquiries "seeking to determine the extent and types of accommodation that were truly necessary for [a] plaintiff were 'job-related and consistent with business necessity.' " *Delson v. Mineta*, 144 F. App'x 136, 138 (2d Cir. 2005) (affirming district court's ruling following a bench trial that defendant's inquiries "to determine the extent and types of accomodation" that plaintiff required were "job-related and consistent with business necessity"); *see also Berger v. New York City Police Dep't*, 304 F. Supp. 3d 360, 372 (S.D.N.Y. 2018) (finding on summary judgment that inquiries to determine the extent and types of accommodation necessary for plaintiff were job-related and consistent with business necessity); *Sosa v. New York Div. of Hum. Rts.*, No. 11-CV-5155 (NGG) (VVP), 2015 WL 5191205, at *11 (E.D.N.Y. Sept. 4, 2015) (finding on summary judgment that employer had legitimate interest in verifying plaintiff's medical condition to determine what, if any, accommodation was required).

At the motion to dismiss stage, however, NYPH has not yet had the opportunity to show that the inquiries Grimes alleges were made regarding her disability were "vital to [NYPH's business," or that such inquiries "genuinely serve[d] the asserted business necessity and that the request [was] no broader or more intrusive than necessary."  *Conroy*, 333 F.3d at 97–98.  As a

---

[9] *See* https://www.eeoc.gov/laws/guidance/enforcement-guidance-disability-related-inquiries-and-medical-examinations-employee.

result, the Court is not currently in the position to find that Grimes's claim is "[im]plausible on its face." *Twombly*, 550 U.S. at 570.  NYPH's motion to dismiss Claim Three is denied.

## V.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIM

Finally, Grimes contends that NYPH intentionally inflicted emotional distress upon her in violation of New York common law (Claim Twelve).

Intentional infliction of emotional distress is a "highly disfavored [tort] under New York law." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014).  Under New York law, a claim for intentional infliction of emotional distress requires a showing of: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."  *Rich v. Fox News Network*, 939 F.3d 112, 122 (2d Cir. 2019) (internal quotation marks omitted).  "[T]he standard of outrageous conduct is strict, rigorous and difficult to satisfy . . . ." *Id.* (internal quotations omitted).  More specifically, to plead an intentional infliction of emotional distress claim, the challenged conduct must "go beyond all possible bounds of decency and . . . be regarded as atrocious and utterly intolerable in a civilized community." *Hughes v. Patrolmen's Benevolent Ass'n of City of N.Y., Inc.*, 850 F.2d 876, 883 (2d Cir. 1988) (internal quotations omitted); *see also Bailey v. New York L. Sch.*, No. 19-3473, 2021 WL 5500078, at *5 (2d Cir. Nov. 24, 2021), *cert. denied*, __ U.S. __, 142 S. Ct. 1685 (2022).

Grimes fails to meet this standard.  Her allegations do not support an inference that NYPH acted with the intent to cause Grimes "severe emotional distress."  Rather, the allegations establish that NYPH acted with the intent to comply with the DOH mandate.[10]  *See e.g.*, *Cagle v. Weill*

---

[10] Courts applying the law of states other than New York have held the COVID-19 vaccine mandates do not give rise to intentional infliction of emotional distress claims in workplace settings. *See, e.g.*, *Cala v. Moorings Park Cmty. Health, Inc.*, 2022 WL 17405581, at *5 (M.D. Fla. Dec. 2, 2022) (applying Florida law); *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 469 (M.D. Pa. 2022) (applying Pennsylvania law).

*Cornell Med.*, No. 22-CV-6951 (LJL), 2023 WL 4296119, at *6 (S.D.N.Y. June 30, 2023).  It is simply not "extreme" or "outrageous" for a health system to present employees with the choice to receive a required vaccination or resign.  Grimes was not, for instance, singled out.  Nor was she vaccinated or tested against her will.  Grimes simply refused to comply with an employment requirement and was deemed voluntarily resigned as a result.  This does not meet the "utterly intolerable" standard required to sustain an intentional infliction of emotional distress claim.

To the extent Grimes seeks to plead a wrongful discharge claim, "there is . . . no cause of action in tort in New York for abusive or wrongful discharge of an at-will employee, [and] [P]laintiff should not be allowed to evade that conclusion or to subvert the traditional at-will contract rule by casting [her] cause of action in terms of a tort of intentional infliction of emotional distress." *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86, 90 (1983); *see also Cagle*, 2023 WL 4296119, at *6.  Grimes's intentional infliction of emotional distress claim (Claim Twelve) must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's religious discrimination claim under Title VII (Claim Ten) and unlawful medical examination claim under the ADA (Claim Three) is DENIED.  Defendant's motion to dismiss all other claims is GRANTED.  The Clerk of the Court is respectfully requested to terminate docket entry 23.

**SO ORDERED.**

Date:  **February 26, 2024**                                            _____
           **New York, NY**                                                   **MARY KAY VYSKOCIL**
                                                                                             **United States District Judge**